# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| CHUKWUKA ONYEKABA, | :: | MOTION TO VACATE |
|    Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:10-CR-0202-RWS-RGV-2 |
| UNITED STATES OF AMERICA, | :: | |
|    Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:15-CV-1773-RWS-RGV |

## FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of movant Chukwuka Onyekaba's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 361], the government's response, [Doc. 364], and Onyekaba's reply, [Doc. 365]. For the reasons that follow, it is **RECOMMENDED** that Onyekaba's § 2255 motion be denied.

## I. PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a forty-six count indictment against Onyekaba and co-defendant Opeoluwa Adigun, charging Onyekaba with one count of conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2) (Count One); fourteen counts of access device fraud, in violation of § 1029(a)(2), (3), (5) (Counts Two through Seven, Thirty-Three through

Thirty-Four, Thirty-Six through Thirty-Seven, Thirty-Nine, Forty-One, Forty-Three, and Forty-Five); twelve counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts Eight through Twelve, Thirty-Two, Thirty-Five, Thirty-Eight, Forty, Forty-Two, Forty-Four, and Forty-Six); one count of mail theft, in violation of 18 U.S.C. § 1708 (Count Thirty); and one count of attempted access device fraud, in violation of § 1029(a)(2), (b)(1) (Count Thirty-One). [Doc. 1].[1] Onyekaba pleaded not guilty, [Doc. 14], and proceeded to a nine-day jury trial represented by court-appointed counsel L. Burton Finlayson, [Docs. 132, 237, 246-48, 250-3, 256, 313-19, 321-22]. Before the jury returned its verdict, the Court granted Onyekaba's motion to dismiss Counts Forty-Three and Forty-Four. [Doc. 321 at 47-48]. The jury then found Onyekaba guilty of all of the remaining twenty-seven counts. [Doc. 260]. The Court imposed a total sentence of seventy-eight months of imprisonment. [Doc. 282].

Onyekaba, still represented by Finlayson, appealed, arguing that: (1) the warrantless search of defendants' vehicle violated the Fourth Amendment; (2) the district court abused its discretion in allowing the government to introduce evidence that Onyekaba was once stopped at a Macy's department store for shoplifting; (3) there

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

was insufficient evidence to convict Onyekaba of the aggravated identity theft counts, the mail theft count, or the access device fraud charged in Count Two; and (4) the Court erred in calculating Onyekaba's loss amount. Br. of Appellant at 15-44, United States v. Onyekaba, Nos. 12-15235, 15301 (11th Cir. Feb. 26, 2013).  The United States Court of Appeals for the Eleventh Circuit summarized the evidence presented at trial as follows:

> . . . [D]efendants, a romantic couple with children together, utilized Adigun's position as a letter carrier with the U.S. Postal Service to intercept mail sent by financial institutions and intended for individuals on her mail route.  After using these individuals' identities to open financial accounts in said individuals' names, the defendants would typically transfer the funds to other accounts and then use those funds to purchase gasoline, electronics, gift cards, and other items.
>
> . . .
>
> . . . [M]any of the victims lived on the mail route of Onyekaba's romantic partner and alleged co-conspirator, Adigun. . . . Onyekaba was in possession of numerous gift cards that had been purchased with credit cards containing the identity information of the victims, and which the victims denied purchasing themselves. . . . [O]n one occasion, Onyekaba was observed sticking his hand into other individuals' mailboxes in the early morning hours, and . . . he then fled the scene when approached by a resident, leaving a scattering of mail on the ground.
>
> . . .
>
> . . . Nadine Doyle testified that while sleeping at her apartment at approximately 3:00 a.m. on May 1, 2009, she was awakened by the sound

3

of an idling car and mailboxes opening and closing. She testified that she looked out the window and saw a car idling next to the mailboxes, so she woke her then-boyfriend (now husband), Michael Doyle, and told him that she thought that someone was stealing mail from the mailboxes. Michael Doyle corroborated Nadine's testimony and testified that he looked out the window and could see a man opening and closing the mailboxes. According to Michael, the man then got into the idling car and drove down the street to another set of mailboxes, at which point the man stopped the car, exited, and approached the mailboxes. Michael then ran out of the apartment, got into his own car, and started to follow the path that the man at the mailboxes had taken. By the time Michael caught up to the man's car, the man was standing outside the car at a third set of mailboxes. Michael yelled at the man, who was startled and proceeded to jump into his idling car and quickly drive toward the exit of the apartment complex, squealing his tires in the process. Shortly thereafter, the man was stopped by Officer Michael Sabens of the Cobb County Police Department and identified as Onyekaba. Officer Sabens testified that he and other officers then went to the mailboxes where Onyekaba had been observed by Michael Doyle, and they saw pieces of mail scattered on the ground around the mailboxes.

United States v. Adigun, 567 F. App'x 708, 710, 715-16 (11th Cir.), cert. denied, 135 S. Ct. 503 (2014). On May 23, 2014, the Eleventh Circuit affirmed Onyekaba's convictions and sentences. Id. at 719.

On May 11, 2015, Onyekaba timely submitted this pro se § 2255 motion, arguing that his counsel provided him ineffective assistance at sentencing by failing to: (1) inform the Court about his "attempt to join the military service, after September 11th"; (2) investigate "the loss amount and victims number"; (3) seek a downward

departure based on his "family situation"; and (4) seek a downward departure based on the "additional immigration detention" he will likely experience after his release from prison.[2] [Doc. 361 at 4-5, 13; Doc. 361-1 at 6-10]. The government responds that all of Onyekaba's claims lack merit. [Doc. 364 at 1-2; 9-17]. Onyekaba's reply adds nothing significant to the discussion of his grounds for relief, but merely reasserts their merits. [Doc. 365].

## II.  DISCUSSION

### A.  Legal Standards

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States

---

[2] Onyekaba further contends that his sentence should be reduced based on a recently proposed amendment to U.S.S.G. § 2B1.1 concerning loss amounts and number of victims. [Doc. 361-1 at 11; Doc. 365 at 8]. However, because the 2015 proposed amendment is not yet in effect, Onyekaba is not entitled to a sentence reduction based thereon at this time.

5

v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case. See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Id. at 697. A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's

6

performance was reasonable and adequate. . . .") (citation omitted). Counsel is not incompetent so long as the particular approach taken could be considered sound strategy. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); see also Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden.").

Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

**B.     Ground One: Onyekaba's Attempt to Join the Military**

Onyekaba first claims that counsel was ineffective for failing to advise the Court during sentencing that Onyekaba had attempted to join the military after September 11th. [Doc. 361 at 4]. Onyekaba states that he did not succeed in joining the military

AO 72A
(Rev.8/82)

because he "failed the written test two different time[s]." [Doc. 361-1 at 8]. However, even actual military service does not support a downward departure absent exceptional circumstances.  See U.S.S.G. § 5H1.11 ("Military service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines."); United States v. Riley, Nos. 08-81-DCR-JGW-1, 12-7238-DCR, 2013 WL 1332450, at 6 (Mar. 11, 2013) ("[S]entence reductions for military service are so discouraged that the Fifth Circuit held that even a defendant who received two purple hearts and a distinguished flying cross did 'not present such extraordinary circumstances as to require departure on the basis of this individual characteristic.'") (citing United States v. Peters, 978 F.2d 166, 171 (5th Cir. 1992)), report and recommendation adopted, 2013 WL 1320769, at *13 (E.D. Ky. Mar. 29, 2013).  Thus, counsel's decision to argue other factors in favor of a lesser sentence and not to advise the Court of Onyekaba's unsuccessful attempts to join the military was reasonable.  Moreover, Onyekaba has not shown prejudice because he cannot show that the Court likely would have imposed a different sentence had this issue been raised.  Accordingly, Onyekaba is not entitled to relief on ground one.

8

### C.     Ground Two: Loss Amount and Number of Victims

Onyekaba next argues that counsel was ineffective for failing to "properly" investigate and object regarding the loss amount and number of victims. [Doc. 361 at 4; Doc. 361-1 at 8]. Onyekaba contends that "[t]he number of the victims presented by the prosecutor was not accounted for because there is not physical evidence of the number of those victims[, and] the actual financial loss did not exceed $200,000.00." [Doc. 361-1 at 8].

Counsel filed a sentencing memorandum objecting to the loss amount and the number of victims. [Doc. 277 at 4-6]. Counsel argued in that memorandum and extensively during the sentencing hearing that the "appropriate loss range . . . should be *at most* between $120,000 and $200,000" and that "Onyekaba should be sentenced *at most* for between 10 and 50 victims." [Id. at 5-6; Doc. 323 at 12-15, 33-37, 44, 97-98]. The Court overruled counsel's objections, [Doc. 323 at 39, 46], and the Eleventh Circuit affirmed the Court's loss amount calculations, Adigun, 567 F. App'x at 717-19. "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." Chandler, 218 F.3d at 1314. Onyekaba does not specify what more counsel should have done or allege what other facts existed that would have reduced the Court's findings regarding the loss amount and number of victims.

9

"Conclusory allegations of ineffective assistance are insufficient." <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992) (citation omitted). Accordingly, Onyekaba has failed to demonstrate deficient performance or prejudice as to this ground.

### D.   Ground Three: Onyekaba's Family Situation

Onyekaba asserts that counsel was ineffective for failing to seek a downward departure based on Onyekaba's family situation. [Doc. 361 at 5; Doc. 361-1 at 9]. Onyekaba states that he and Adigun "had four young American born [children] that [were] left behind as a result of their incarceration." [Doc. 361-1 at 9].

This claim is not supported by the record. Counsel addressed Onyekaba's family situation in the sentencing memorandum, [Doc. 277 at 2-3, 11-12], and argued for a downward variance during the sentencing hearing, stressing the impact of Onyekaba's and Adigun's incarceration and subsequent deportation on their four young children, who are United States citizens, [Doc. 323 at 80, 84-86]. In sentencing Onyekaba, the Court noted its great concern for the children, but recognized that it might not be in the children's best interests to live with the defendants and have them as role models. [<u>Id.</u> at 93-95]. Onyekaba again does not allege what more counsel could have done to emphasize Onyekaba's family situation and thus, fails to show deficient performance by counsel. Onyekaba further cannot show prejudice given that

10

the Court considered his family situation when imposing its sentence and noted the "very sad set of circumstances." [Id. at 95].

### E. Ground Four: Immigration Detention Following Onyekaba's Release

Lastly, Onyekaba claims that counsel was ineffective for failing to seek a downward departure based on the "additional immigration detention" he will likely experience after his release from prison. [Doc. 361 at 5; Doc. 361-1 at 9-10]. During the hearing, counsel argued that a variance was warranted because Onyekaba would likely be deported to Nigeria, where he would face dangerous and poor conditions. [Doc. 323 at 85, 87]. However, a downward variance cannot be based on the immigration consequences of a conviction. See United States v. Maung, 320 F.3d 1305, 1309 (11th Cir. 2003) ("[A] sentencing court may not depart downward for the purpose of . . . shield[ing] the defendant from the immigration consequences" of his conviction.); see also United States v. Barrios-Ipuana, 371 F. App'x 27, 29-30 (11th Cir. 2010) (per curiam) (noting that a district court is not required to give any weight to the "collateral consequences of a defendant's alien status" in determining whether a downward departure is warranted); United States v. Lahoud, 178 F. App'x 926, (11th Cir. 2006) (per curiam) ("[T]he collateral consequences that a defendant faces because of being a deportable alien generally do not support a departure."). Accordingly,

11

Onyekaba cannot show that counsel was ineffective for failing to raise this meritless argument at sentencing. See United States v. Cisneros, No. 1:09-CR-514-TWT, 2014 WL 5822684, at *5 (N.D. Ga. Nov. 6, 2014) (holding that "counsel could not have been deficient for failing to make" the meritless argument that a lower sentence was warranted because defendant was "not a U.S. citizen and therefore ineligible for certain programs offered by the Federal Bureau of Prisons to reduce sentences"). Moreover, Onyekaba cannot show prejudice because the Court was aware that some period of immigration detention may follow Onyekaba's sentence, see [Doc. 323 at 96-97], and there is no reason to believe that the Court would have imposed a lower sentence had counsel said more about the possibility of immigration detention.

### III. CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant

has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Based on the foregoing discussion of Onyekaba's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

### IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that this 28 U.S.C. § 2255 motion to vacate sentence, [Doc. 361], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED**, this 24th day of August, 2015.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE